179 So.2d 240 (1965)
Charles P. SMITH, Jr., Appellant,
v.
Olivia W. GOODPASTURE and Lowell E. Jarrett, Jr., Appellees.
No. 4826.
District Court of Appeal of Florida. Second District.
July 28, 1965.
Rehearing Denied November 4, 1965.
W.C. Owen, Jr., of Miller, Cone, Owen, Wagner & Nugent, West Palm Beach, for appellant.
Wallis E. Schulle, of Earnest, Pruitt & Schulle, and Robert V. Parker, of O'Connell & Cooper, West Palm Beach, for appellees.
SMITH, Judge.
Charles Smith, Jr., one of the defendants in this personal injury case, appeals a final judgment entered on a jury verdict exonerating his co-defendant, Lowell E. Jarrett, Jr., and awarding the plaintiff, Olivia W. Goodpasture, $78,000 in damages. A serious three-car collision gave rise to the litigation. We find no merit in any of the points raised on appeal except the one challenging the verdict as being excessive. This requires a review of the question of the damages allowed the plaintiff.
In denying a motion for a new trial the court held:
"The Court is of the opinion that the verdict was excessive but not to the extent that it would warrant a new trial or the ordering of a remittitur."
This order comes to us properly boxed in the wide discretion of the trial court on the *241 question of new trials, carefully wrapped in a presumption of correctness and securely tied with the strong cord of a jury verdict. None of these are lightly regarded.
We are also aware of the meaningless yet often hurled accusation that a court in setting aside a verdict as excessive usurps the prerogative of the jury. However, we have a duty to review the amount of damages awarded in this case for the simple reason that the question has been properly presented to the court by the appellant. We do not side-step this duty to review which is not in derogation of the right to trial by jury but which is rather one of the historic safeguards of that right. Bartholf v. Baker, Fla. 1954, 71 So.2d 480.
The record on appeal as it relates to the issue of damages should be viewed in a light most favorable to the prevailing party. On this issue Mrs. Goodpasture offered the testimony of her several treating and examining physicians, her own testimony and that of her sister. The medical testimony established that she suffered a severe fracture of her jaw, a fracture of the lower right femur in the area of the knee as well as various bruises, lacerations and contusions. The plaintiff was hospitalized in Florida for four days before being placed in a cast and transported to a hospital in her home state of Tennessee where she was confined an additional three and one-half months. For two months of this hospital stay the plaintiff remained in traction and her situation was further complicated by a development of thrombophlebitis in her affected leg causing acute pain for nearly a week.
Three separate operations by a plastic surgeon were required to repair the fracture of the plaintiff's jaw and cheekbone and at one point her jaw had to be wired in an immobile position for a six-week period. Fat was removed from her groin to rebuild the sunken eye socket on the left side of her face. As a result of these procedures good functional results, with slight diminution in the ability to chew, were obtained and the cosmetic correction was described as "good" though less than "ideal".
The plaintiff, as a result of the leg injury, has a permanent two-inch shortening of the leg with a resultant disability of not less than 50% nor more than 75%. She must now use a walker and wear a full leg brace which requires the wearing of special shoes and the manipulation of a mechanism if she wishes to bend her knee or sit down. She will have pain in this knee for the remainder of her life. Her injuries were described as initially being extremely painful with lessening discomfort after the first several weeks.
At the time of the accident the plaintiff was 68 years old, unemployed and was in good health. She did her own house and yard work, enjoyed handiwork and vacation trips with friends and was active in her church work and garden club. She testified that she cannot now get around as before and must depend on friends to take her about. She now requires domestic help and suffers from the psychological effects of her injuries including what witnesses described as "a difference in her appearance."
The award of damages made in this case can be broken down into two categories:
1) The plaintiff's actual monetary loss which was proven to be $6,192.47 and which included doctor bills, hospital bills and attendant costs. (No future medical costs were proven, nor were any loss of earning or punitive damages.) It is not this award that concerns us in this appeal.
2) The second category of damages awarded to the plaintiff fall under the broad heading of pain and suffering both past, present and future. Included under this may be such items as humiliation, inconvenience, mental anguish, inability to lead a normal life, disfigurement, etc. The balance of the $78,000 award after the $6,192.47 is deducted falls in this category and amounts to $71,807.53. With this amount we are concerned.
*242 We must admit that the very authorization of an award of damages for pain and suffering invites measurement of that which is immeasurable. Absent any available yardstick this difficult task must initially be placed in the hands and enlightened consciences of impartial jurors. However, mental pain and suffering damages must bear some reasonable relation to the facts of the case, the status of the parties, the amount allowed as compensatory damages, and the philosophy and general trend of decisions affecting such cases. Florida Dairies Co. v. Rogers, Fla. 1935, 119 Fla. 451, 161 So. 85; Gresham et al. v. Courson, Fla.App. 1965, 177 So.2d 33 (Opinion filed June 15, 1965, First District).
The facts of this case as they relate to the suffering endured by this plaintiff have already been summarized and are neither minimized nor overlooked. When the amount allowed for computable compensatory damages (some $6,000) is contrasted with the amount allowed for pain and suffering (some $72,000) we see it multiplied by twelve. This amount considered in the light of "the general trend and philosophy of decisions" on this question and in light of other aspects of this case including the average life expectancy of the plaintiff is clearly excessive. Renuart Lumber Yards, Inc. v. Levine, Fla. 1950, 49 So.2d 97; Bartholf v. Baker, supra. For cases which upheld verdicts as not being excessive see, Clark v. Rousseau, Fla. App. 1961, 133 So.2d 764; Tampa Transit Lines, Inc. v. Smith, Fla.App. 1963, 155 So.2d 557; Rite Rate Cab Co., Inc. v. McGee, Fla.App. 1963, 159 So.2d 663. For an annotation of cases involving the question of excessiveness of damages see 16 A.L.R.2d 3.
We conclude that in view of the facts, the status of the plaintiff, the amount allowed as computable compensatory damages and in light of the philosophy and general trend in cases in this state dealing with the question of damages for pain and suffering that the award in this case is clearly excessive. We reverse with directions that the trial judge enter an appropriate remittitur. If in the opinion of the trial judge it should be impossible for him to fix and determine a proper amount of remittitur, then he is directed to grant a new trial on the question of damages only. See Bartholf v. Baker, supra.
SHANNON, Acting C.J., and BARKER, ROGER A., Associate Judge, concur.