328 So.2d 858 (1976)
UNIVERSITY COMMUNITY HOSPITAL, Appellant,
v.
William R. MARTIN, Appellee.
No. 75-583.
District Court of Appeal of Florida, Second District.
March 26, 1976.
*859 John R. Bush, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
Richard M. Mitzel, of Marlow, Mitzel, Ortmayer & Shofi, and David A. Maney, of Gordon & Maney, Tampa, for appellee.
SCHEB, Judge.
Appellant/defendant University Community Hospital appeals from a judgment entered on a jury verdict awarding appellee/plaintiff William R. Martin $350,000. The thrust of the appellant Hospital's contention is that Martin was an irreversible paraplegic when he was admitted to the Hospital; hence, the fall he sustained as a result of the Hospital's alleged negligence did not aggravate his then existing injuries. We affirm the judgment of the trial court as to the Hospital's liability, but reverse and remand to the trial judge to enter an appropriate remittitur.
Plaintiff Martin, age 37, was admitted to the defendant Hospital on August 21, 1968, after having suffered a gunshot wound to his neck. He was treated by Dr. Romano, a general surgeon, and Dr. Trupp, a neurosurgeon. During the first few days of treatment, Dr. Romano formed an opinion that Martin would be a permanent paraplegic. Dr. Trupp was of the opinion that Martin's spinal column had suffered such severe damage that "nothing we could do would help him" and that eventual spasms in his extremities would be inevitable. On August 22, however, Dr. Trupp noted in the hospital records that Martin "apparently appreciates sensation to his feet. This is an amazingly good thing."
On August 26, while Martin was in an intensive care unit, nurses at the hospital placed him on a special bed used to allow immobilized patients to be rotated to a vertical position. The nurse who was responsible for checking out the bed failed to check on the position of an essential bolt, and as the bed was rotated Martin fell. There was conflict in the testimony as to injuries caused by the fall. Martin claimed he struck his back on a chair, while the nurse testified she caught him prior to the time he struck anything. After this incident, Martin was examined by Dr. Gomez, who noted the patient had not sustained any injury when a section of the bed had almost fallen down. Martin testified, however, that his pain intensified after the fall and that it was only after the fall that he had begun to suffer spasms. Moreover, he testified to a decrease *860 in sensation. He was discharged from the defendant Hospital on October 17, 1968, after which he was a patient in various other hospitals. He has since undergone several operations, but he remains paralyzed.
Dr. Feegle, a pathologist, testified as an expert witness for the plaintiff Martin. It was Dr. Feegle's opinion that the fall striking the mid portion of Martin's back in the area through which the bullet had passed had caused some degree of neurological and spinal cord damages, which in turn caused additional injury to the wound site. And, while Dr. Feegle could not assess any particular degree of aggravation caused to the already existing damage, he did testify that Martin's fall from the bed injured him to some additional degree. For the defendant, Dr. Trupp testified that he had seen no medical changes in Martin on August 26, or thereafter, which warranted any inference that any injury such as a fall occurring in the Hospital had worsened his condition, but rather that all of Martin's problems were consistent with the original gunshot injury and inconsistent with any other injury.
Initially, we reject the Hospital's argument that the plaintiff's evidence did not warrant submission of the case to the jury. We find competent substantial evidence from which the jury found that Martin suffered additional injury resulting from the Hospital's negligence in allowing him to fall from the bed. Martin testified he had fallen out of bed and there were notes from one of the nurses indicating that after such fall he was unable to move his toes. Even Dr. Trupp acknowledged there had been some sensation in Martin's feet prior to the fall, but there was none there after it. This testimony, together with Dr. Feegle's testimony that the fall had caused some degree of re-injury to the original injury, was a sufficient evidentiary basis for the jury to have concluded that: (a) Martin fell; (b) that such fall was a result of the Hospital's negligence; (c) that such negligence was the proximate cause of some re-injury or aggravation of the plaintiff's existing injury; and (d) that the plaintiff suffered some general damages as a result thereof.
On the issue of damages, the trial judge instructed the jury as follows:
"... if you find that the testimony proved negligence which was a legal cause of loss, injury or damage to William Martin in and for which the University Community Hospital is responsible, you should award William Martin an amount within that the greater weight of evidence shows will fairly and adequately compensate him for such losses or injuries or damages including any such damages William Martin is reasonably certain to incur or experience in the future.
You should consider the following elements: Any bodily injury sustained by William Martin and any resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life experienced in the past or to be experienced in the future. There is no exact standard for figuring the compensation to be awarded, but any such award should be fair and just in light of the evidence.
Any aggravation of the existing disease or physical deformity or aggravation of any such resulting from such injury, if you find that there was such an aggravation, you should determine if you can, what portion of William Martin's condition resulted from this injury and allow in your verdict only for the aggravation.
However, if you cannot make a determination or if it cannot be distinguished which condition is apart from the injury, you should consider and make an allowance in your verdict for the entire condition, any earnings or working time lost in the past and the ability to earn money in the future.

*861 ... [F]or your determination ... is whether the event was negligence in allowing Mr. Martin to fall and if so, whether such negligence was a legal cause of the loss, injury, or damages sustained by him." (Emphasis supplied).
Thus, once the jury determined the Hospital was liable to Martin, it became their duty to attempt to determine what part of Martin's condition resulted from the Hospital's negligence. We think it was here that the jury erred because we believe from a study of the evidence that it was patent that the aggravation of Martin's condition caused by such injuries sustained at the Hospital could be distinguished from the condition which resulted from his original injuries.
Despite Dr. Trupp's testimony that on August 22, prior to the fall, Martin apparently appreciated some sensation to his feet, no medical evidence demonstrated any possibility that Martin would recover from the problems inflicted by the original gunshot wound. Dr. Romano's testimony on this point was as follows:
"Q What was your prognosis, if any, when he left University Community Hospital?
A Well, the patient was a paraplegic, he was paralyzed for life about the lower extremities.
Q When you observed him over the period of time from August 21, 1968 through August 25, 1968, did you form an opinion as to whether or not he would be a paraplegic for the rest of his life?
A In my opinion he was going to be, yes, sir.
Q And does that mean confined to a wheelchair?
A Yes, sir.
Q Doctor, I want to be very clear about this. You formed this opinion as early as the period of time from the 21st through the 25th of August, 1968, is that true?
A Yes, sir."
Dr. Trupp's testimony corroborated Dr. Romano's prognosis that Martin would be a permanent paraplegic. Finally, such prognosis was never contradicted by Dr. Feegle or by any other medical testimony.
Where a plaintiff seeks to recover damages by reason of the defendant's negligence, the plaintiff must not only prove the extent of his injuries, but also that they were proximately caused by the negligence of the defendant. Chomont v. Ward, Fla. 1958, 103 So.2d 635. We recognize this requirement has been relaxed where the evidence indicates the defendant's negligence has proximately resulted in an aggravation of a pre-existing injury and the entire consequence cannot reasonably be divided as between several independent causes, Hamblen, Inc. v. Owens, 1937, 127 Fla. 91, 172 So. 694, 696; Washewich v. Le Fave, Fla.App.4th 1971, 248 So.2d 670. See also, Standard Jury Instruction 6.2(b), which was given by the trial judge.
Here, however, it was possible for the jury to separate the damages consequent from the two injuries, since all the evidence indicated Martin would remain a paraplegic for the rest of his life regardless of the fall. Additional damages beyond those awarded for pain and suffering associated with the fall would properly be limited to the damages caused beyond that point; i.e., primarily the loss of sensation and increase in pain. Taking the evidence in the light most favorable to the plaintiff, he is entitled to full compensation for these elements of damage, but there was no showing of any additional medical bills and no further loss of earning capacity caused by the fall.
*862 Even though the amount awarded a plaintiff in an action to recover damages for personal injuries rests largely in the descretion of the jury, Sproule v. Nelson, Fla. 1955, 81 So.2d 478, nevertheless, where a verdict is so manifestly excessive as to shock the judicial conscience, or where it is apparent the jury has misconceived the merits of the case as relates to the damages recoverable, then so much of that verdict as appears excessive may be set aside by the trial court or by this court. See, Bartholf v. Baker, Fla. 1954, 71 So.2d 480; 9A Fla.Jur., Damages, § 98 (1972). Here, from the size of the verdict, we think it evident the jury not only failed to separate the fall from the original injury, but also was quite likely swayed by sympathy to award damages which it based, in part, upon the tragic injury originally sustained by the plaintiff Martin. Considering all circumstances, a verdict of $350,000 is shocking to our judicial consciences.
We consider a remittitur appropriate in this case. In so ordering, an appellate court has two courses open to it. It may either set the amount of the remittitur itself, see Washwell, Inc. v. Morejon, Fla.App.3d 1974, 294 So.2d 30, or remand for the trial judge to set an appropriate remittitur, see Smith v. Goodpasture, Fla.App.2d 1965, 179 So.2d 240; Burch v. Gilbert, Fla.App.1st 1963, 148 So.2d 289.
Due to the familiarity of the trial judge with the proceedings and his availability to review this case upon remand, we adopt the latter course and remand to the eminent trial judge, Honorable James A. Lenfestey, to enter an appropriate remittitur. If, in the opinion of the trial judge, it should be impossible for him to determine a proper amount of remittitur, then he is directed to grant a new trial on the question of damages only.
McNULTY, C.J., and GRIMES, J., concur.