661 So.2d 1301 (1995)
W.R. GRACE & COMPANY-CONN., and Owens Corning Fiberglas, Appellants,
v.
Earl PYKE, Appellee.
Nos. 94-791, 94-767.
District Court of Appeal of Florida, Third District.
November 1, 1995.
Kubicki & Draper and Angela C. Flowers; Crosby, Saad, Beebe & Crump; Berger & Chafetz and Steven R. Berger, Miami, for appellants.
Ferraro & Associates and Marjorie N. Salem and James L. Ferraro, Miami, for appellee.
Before BARKDULL, COPE and GODERICH, JJ.
*1302 BARKDULL, Judge.
This is an appeal from a final judgment against two defendants in an asbestos personal injury action. Defendants/appellants are W.R. Grace & Co. Conn. (Grace) and Owens-Corning Fiberglas Corporation (OCF). Plaintiff filed suit against 39 separate defendants. He claimed that all of the defendants were manufacturers or distributors of asbestos-containing products, that as a pipefitter he was exposed to those products, and that he contracted an asbestos-related disease as a result. Plaintiff alleged that the defendants were negligent in failing to warn of the dangers of breathing asbestos dust. Ultimately, all other defendants were dismissed, received a directed verdict, or were otherwise dropped from litigation before submission to the jury. The jury returned a verdict in favor of plaintiff and against OCF and Grace. Negligence was apportioned at 70% against OCF and 30% against Grace.[1] Post-trial motions were denied and timely appeals followed which have been consolidated.
The issues urged as error are 1) that the trial court erred in denying Grace's verified motion to disqualify the trial judge; 2) that the testimony of a witness, who was shown to be incompetent, should not have been admitted, or, if he was competent to testify, the prejudicial effect of his testimony should have excluded it from jury consideration; 3) that the trial court erred in failing to instruct the jury to consider the negligence of non-parties and failing to include non-parties on the verdict form; and 4) that the trial court erred in failing to grant a directed verdict or a new trial on damages for future loss of earning capacity because of insufficiency of evidence, excessiveness of award, and the jury's failure to reduce the award to present value.[2]
We find no merit in the first three issues urged for reversal, Jackson v. State, 599 So.2d 103 (Fla. 1992); W.R. Grace and Co.  Conn. v. Dougherty, 636 So.2d 746 (Fla. 2d DCA 1994), review denied, 645 So.2d 454 (Fla. 1994), and review denied, 645 So.2d 457 (Fla. 1994); Matson v. Wilco Office Supply and Equip. Co., 541 So.2d 767 (Fla. 1st DCA 1989); Cardinal v. Wendy's of South Florida, 529 So.2d 335 (Fla. 4th DCA 1988); Zabrani v. Riveron, 495 So.2d 1195 (Fla. 3d DCA 1986); compare A.W. Chesterton v. Fisher, 655 So.2d 170 (Fla. 3d DCA 1994); Baione v. Owens-Illinois, 642 So.2d 480 (Fla. 2d DCA 1994), but we do find error in the award for loss of earning capacity.
The purpose of a jury's award of damages for loss of any future earning capacity is to compensate a plaintiff for loss of capacity to earn income as opposed to actual loss of future earnings. Renuart Lumber Yards, Inc. v. Levine, 49 So.2d 97 (Fla. 1950). A plaintiff must demonstrate not only reasonable certainty of injury, but must present evidence which will allow a jury to reasonably calculate lost earning capacity. See Auto-Owners Ins. Co. v. Tompkins, 651 So.2d 89 (Fla. 1995); Long v. Publix Super Markets, Inc., 458 So.2d 393 (Fla. 1st DCA 1984). Once sufficient evidence is presented, the measure of damages is the loss of capacity to earn by virtue of any impairment found by the jury and the jury must base its decision on all relevant factors including the plaintiff's age, health, habits, occupation, surroundings, and earnings before and after the injury. Atlantic Coast Line R.R. v. Ganey, 125 So.2d 576 (Fla. 3d DCA 1960). Once an amount is determined, a jury is required to reduce any award for loss of future earning capacity to present value. Section 768.77, Florida Statutes (1993); Townsend v. Gibson, 67 So.2d 225 (Fla. 1953). Each of these steps is critical in the jury's determination of an award for loss of future earning capacity.
*1303 As the Second District wrote in University Community Hospital v. Martin, 328 So.2d 858 (Fla. 2d DCA 1976):
Even though the amount awarded a plaintiff in an action to recover damages for personal injuries rests largely in the discretion of the jury, nevertheless, where a verdict is so manifestly excessive as to shock the judicial conscience, or where it is apparent the jury has misconceived the merits of the case as relates to the damages recoverable, then so much of that verdict as appears excessive may be set aside by the trial court or by this court.
Id. at 862 (citation omitted). As this Court explained in Ganey, supra, "the proof [of loss of future earning capacity] must stand appellate scrutiny as to its sufficiency... ." 125 So.2d at 579.
In the instant case, the trial court recognized that the evidence submitted by plaintiff was meager but the court deemed it sufficient to submit the issue to the jury. The trial court expressed concern on several occasions that plaintiff's testimony was "thin" and "not very good" but did not direct a verdict and refused to instruct the jury on loss of future earning capacity. Plaintiff's own doctor testified that plaintiff's asbestos-related disease was essentially mild and in the early stages and plaintiff admitted that no doctor had ever told him that he could not work. No evidence was presented regarding the types of work for which plaintiff was suited or the types of employment which may have been available to plaintiff but for his alleged injury.
Plaintiff testified that he was currently earning approximately $40,000.00 per year working for his uncle and that he was being laid off as part of a forced reduction. He had earned $40,000.00 per year as a pipefitter before his illness, and continues to earn that amount in his current employment as an estimator. He still possesses an earning capacity, even if he cannot work as a pipefitter. The fact that a plaintiff is earning as much or more than he earned prior to an injury makes his burden of persuading the jury that he suffered an economic loss difficult. See Long, supra.
At trial, over objection, plaintiff was permitted to argue that he expected to be laid off from his current employment at some time in the future for reasons unrelated to his illness, and he needed to be compensated for that expectation. The testimony that there was a possibility he would lose his job was irrelevant, purely speculative and inappropriate. Any future loss of earnings due to a reduction in work force would not be caused by his asbestos-related illness and, therefore, should not have been the basis of an award of damages by the jury. Plaintiff did not testify that he was being laid off because of his asbestos disease nor did he testify as to any efforts to find other employment except vague references to "getting the word out."
A plaintiff is entitled to an instruction on loss of ability to earn money in the future where there is evidence of an injury and evidence which is sufficiently detailed to allow the trier of fact to quantify the loss of earning capacity. Long, supra; Hatfield v. Wells Bros., Inc., 378 So.2d 33 (Fla. 2d DCA 1979), cert. denied, 388 So.2d 1119 (Fla. 1980); Allstate Ins. Co. v. Shilling, 374 So.2d 611 (Fla. 4th DCA 1979). It was the jury's role to determine the amount plaintiff could earn in other occupations, as compared to his earnings as a pipefitter and award damages for any diminution in earning capacity. While there was some evidence that plaintiff had sustained an injury, there was no expert or lay testimony regarding his loss of future earning capacity. There was no testimony presented concerning the employment market for a 53 year old individual with high school education. The evidence showed that he had not suffered any economic loss due to his condition, and plaintiff introduced no evidence at trial to support a finding that he was totally disabled and could not earn any money following his injury. Given the total absence of evidence supporting a claim for loss of future earning capacity, the trial court should have granted a directed verdict on the issue.
The trial court also permitted plaintiff to mischaracterize his future damages claim as one for future loss of earnings. This was error as Florida law does not recognize a *1304 claim for future loss of earnings. Under Florida law, the only future damages available relative to income are damages for loss of earning capacity. See Renuart Lumber Yards, supra. An award for loss of earning capacity is measured by the plaintiff's diminished ability to earn money in the future. Baggett v. Davis, 169 So. 372 (Fla. 1936); Shilling, supra. The jury is not to be concerned with actual future loss of earnings, but with the loss of the power to earn. Ganey, supra; Florida Greyhound Lines, Inc. v. Jones, 60 So.2d 396 (Fla. 1952).
Plaintiff was 53 years old at the time of trial, and weighed 322 pounds. The mortality tables indicated a life expectancy of 22.7 years. The jury could reasonably assume that Mr. Pyke would work until age 65 as his attorney suggested during closing argument. Accordingly, the jury could have considered the loss of earning capacity, if any, only for a 12 year period. See Renuart-Lumber Yards, supra, (jury must apply common sense in determining the number of years a plaintiff might reasonably be expected to work). Under no circumstances could the evidence support an award of $810,000.00 for loss of earning capacity. Dividing the award of $810,000.00 by the 12 years plaintiff could be expected to continue working, the jury awarded $67,500.00 per year for loss of earning capacity to age 65 without any basis and without any reduction for residual earning capacity. This yearly figure, which was not reduced to present value, is impermissibly high in that it is substantially greater than the yearly income plaintiff earned prior to his injury.
The trial court properly instructed the jury that an award of future loss of earning capacity damages must be reduced to present value. Section 768.77, Florida Statutes (1993). However, plaintiff failed to present evidence to guide the jury in reducing future damages to present money value; there was no testimony on any method to be used for reducing such future damages to present value. See Walt Disney World v. Blalock, 640 So.2d 1156 (Fla. 5th DCA 1994). It is apparent from the amount of the award that the jury failed to follow the court's instructions.
Even assuming plaintiff submitted sufficient evidence of injury, the evidence does not support the amount of damages awarded. The verdict of $810,000.00 is so excessive as to "shock the judicial conscience" and it cannot withstand "appellate scrutiny." Accordingly, the verdict cannot stand. See Vibrant Video, Inc. v. Dixie Pointe Associates, 567 So.2d 1003 (Fla. 3d DCA 1990); see also Haddigan v. Harkins, 441 F.2d 844 (3d Cir.1971); Seaboard Coast Line R.R. Co. v. Burdi, 427 So.2d 1048 (Fla. 3d DCA 1983). The judge who presided over the trial was not available to consider defendants' post-trial motions due to his death, and the power of the successor judge to grant relief was limited. Groover v. Walker, 88 So.2d 312 (Fla. 1956); Smith v. Mobley, 95 Fla. 829, 116 So. 760 (1928); Better Constr., Inc. v. Camacho Enter., 311 So.2d 766 (Fla. 3d DCA 1975). Therefore, the award for future loss of earning capacity is now reversed with directions to enter a directed verdict for defendants. In all other respects the final judgment and post-trial orders are affirmed.
Affirmed in part; reversed in part, with directions.
GODERICH, J., concurs.
COPE, Judge (specially concurring).
I concur in all except footnote 2. In my view the appellants' initial briefs clearly and adequately raise as an issue the failure of the trial court to permit the reading of plaintiff Pyke's deposition. Although it may have been better if appellants had created a separate point or subpoint on appeal relative to the Pyke deposition, it was permissible for appellants to include this issue within their point under Fabre v. Marin, 623 So.2d 1182 (Fla. 1993). Appellants reason that the Pyke deposition, if read to the jury, would have provided the necessary showing to allow the inclusion of Fabre defendants on the verdict form.
Our policy should be to decide appeals on the merits, not on matters of form. Here the appellants' contention is perfectly clear and there is a logical basis for the organization of the appellate argument.
*1305 On the merits, however, affirmance is in order. Although the trial court erred by excluding the Pyke deposition, see Fla. R.Civ.P. 1.330(a)(2), the error was harmless. The deposition did not contain enough information to assist the appellants in any material way in meeting their burden under W.R. Grace & Co.  Conn. v. Dougherty, 636 So.2d 746 (Fla. 2d DCA 1994), review denied, 645 So.2d 454 (Fla. 1994), and review denied, 645 So.2d 457 (Fla. 1994). For that reason I concur in affirming on this issue, and I concur in the remainder of the opinion of the court.
NOTES
[1] The verdict set forth total damages of $810,000.00 in future lost wages and $245,000.00 for pain and suffering, for a total recovery of $1,055,000.00.
[2] Grace and OCF, in the argument sections of their briefs, attempt to raise error in the failure of the trial court to permit the reading of Mr. Pyke's deposition. However, Grace and OCF failed to adequately raise it as an issue on appeal, thus precluding review. Fla.R.App.P. 9.210(b); Lester v. Arb, 658 So.2d 583 (Fla. 3d DCA 1995); Rodriguez v. State, 502 So.2d 18 (Fla. 3d DCA 1987); Singer v. Borbua, 497 So.2d 279 (Fla. 3d DCA 1986).