BERGER, J.
Volusia County appeals a final judgment entered in favor of Erin Joynt in the sum of $2.6 million. The County challenges only that portibn of the judgment awarding damages for lost earning capacity and future medical expenses. As to those future economic damages, the County argues there was no reasonable evidence on which the jury could legally predicate a verdict. We agree.
In July 2011, Joynt was severely injured when she was run over Jby a Volusia County Beach Patrol truck while sunbathing.[1] Thereafter, Joynt brought a negligence suit against the County, seeking damages for the injuries she suffered. Following a four-day trial, the jury awarded $2.6 million in compensatory damages, broken *450 down- as follows: $2 million for past and future pain and suffering; $500,000 for diminished earning capacity, and $100,000 for future medical expenses. As previously stated, only the damages awarded for diminished earning capacity and future medical expenses are in dispute. As to those claims, the County argues the trial court erred in failing to grant its motion for directed verdict.
“A motion for directed verdict should be granted only where there is no reasonable evidence upon which a jury could legally predicate a verdict in favor of the non-moving party.” Benitez v. Joseph Trucking, Inc., 68 So.3d 428, 430 (Fla. 5th DCA 2011) (citing Etheredge v. Walt Disney World, Co., 999 So.2d 669, 671 (Fla. 5th DCA 2008)). Our review is de novo. Seibert v. Riccucci, 84 So.3d 1086, 1088 (Fla. 5th DCA 2012) (citing Andrews v. Direct Mail Express, Inc., 1 So.3d 1192, 1193 (Fla. 5th DCA 2009)).
We begin our analysis with Joynt’s claim for loss of future earning capacity. On this claim, the jury awarded $500,000 in damages. Florida allows recovery for future damages for loss of earning capacity. W.R. Grace & Co.-Conn. v. Pyke, 661 So.2d 1301, 1304 (Fla. 3d DCA 1995) (citing Renuart Lumber Yards, Inc. v. Levine, 49 So.2d 97, 99 (Fla.1950)). The purpose of such an award is to “compensate a plaintiff for loss of capacity to earn income as opposed to actual loss of future earnings.” Id. at 1302. “[T]he appropriate test is to permit the recovery of future economic damages when such damages are established with reasonable certainty.” Auto-Owners Ins. Co. v. Tompkins, 651 So.2d 89, 91 (Fla.1995). “A plaintiff must demonstrate not only reasonable certainty of injury, but must present evidence which will allow a jury to reasonably calculate lost earning capacity.” W.R. Grace & Co.Conn., 661 So.2d at 1302 (citing Auto-Owners Ins. Co., 651 So.2d at 91); accord Pruitt v. Perez-Gervert, 41 So.3d 286, 289 (Fla. 2d DCA 2010); Truelove v. Blount, 954 So.2d 1284, 1288 (Fla. 2d DCA 2007); Hubbs v. McDonald, 517 So.2d 68, 69 (Fla. 1st DCA 1987) (“A jury instruction on diminished capacity to earn in the future is warranted when the record demonstrates the existence of ‘reasonably certain evidence that the capacity to labor has been diminished and that there is a monetary standard against which the jury can measure any future loss.’” (quoting Long v. Publix Super Markets, Inc., 458 So.2d 393, 394 (Fla. 1st DCA 1984))); Allstate Ins. Co. v. Shilling, 374 So.2d 611, 613 (Fla. 4th DCA 1979) (holding that evidence of “some degree of permanent injury is sufficient” but that there also must exist “some basis upon which the jury can reasonably assess damages”). The County convincingly argues that Joynt failed to meet her burden. Although she put on evidence sufficient to establish reasonable injury, Joynt failed to demonstrate any diminished ability to earn money in the future and failed to present evidence that would allow the jury to quantify the amount of an award.
Prior to May 2010, Joynt was employed as a paraeducator, which is a teaching-related position within a school, where she was generally responsible for specialized or concentrated assistance for students in elementary and secondary schools. However, at the time of the accident, she was voluntarily unemployed, earning no income.[2]
Just over a year after the accident, Joynt resumed her employment as a read *451 ing intervention paraeducator working full-time for $18,000 per year with benefits. Although she faced some physical challenges,[3] the record reflects those challenges did not affect her ability to do her job. Joynt testified that she'loved her job as a paraeducator and intended to continue her employment the following school year. Joynt’s principal, Brandi Flisram, confirmed that she planned on having Joynt return to hér position for the following school year, opining that students like her, she is an effective teacher, and her evaluation was above satisfactory. In fact, Ms. Flisram noted that many of Joynt’s students actually tested out of the reading intervention program due to her- teaching ability. Ms. Flisram had no concerns about Joynt’s progression as an educator, and she further testified that - none of Joynt’s physical limitations would affect Joynt’s ability to be promoted, although she would be reevaluated if her health ever declined.
Joynt relies on the latter part of Ms. Flisram’s testimony to support the damage award, arguing that a simple review of the trial transcript by Ms. Flisram, which contained the testimony of various doctors describing her injuries, would likely cost Joynt her career. She claims the jury could have surmised that, although optimistic about her future, she is reasonably certain to losé her job as a paraeducator due to her injuries. To that end; she asserts the $500,000 award is equivalent to earning $17,241.38 per year, assuming she would have worked until the social security retirement age of sixty-five. This argument is purely speculative. As the trial court acknowledged:
Now, you know, the problem with that is [the jury] may be out for hours anguishing over this because there’s not really- any evidence as to how they could come up with a number and upon which they could base a number, so what does a full time teacher make. And it’s, based on this evidence, I think sheer speculation to say she’s likely to get fired when she gets back. I mean, I guess you can argue it, but I’m not'sure there’s really any evidence that she’s going to be....
[[Image here]]
What other evidence is there other than, I guess, you' could just kind of speculate that someone with these injuries — and I don’t diminish her injuries. I’m not trying to denigrate that at all, but I just don’t know how you can say, well — what age would they pick out, 50, 55,45, 60? It just would be pure, abject speculation, wouldn’t it?
Yes, which is , why it was error to submit this claim to the jury. See W.R. Grace & Co.-Conn., 661 So.2d at 1303 (finding “testimony that there was a possibility that [plaintiff] would lose his job was irrelevant, purely speculative, and inappropriate” and that directed verdict should have been granted where trial court recognized the evidence, submitted by,plaintiff was meager).
We find there was absolutely no testimony presented- to indicate Joynt was completely disabled from further gainful employment as the result of her injuries or was unable to work to the same age she would have otherwise. Indeed, the opposite is true. As the County highlights, the evidence demonstrates that Joynt’s earning capacity did not diminish, but rather increased after the -accident. And, while this fact alone does not necessarily preclude recovery, see Miami-Dade County. v. Cardoso, 963 So.2d 825, 828 (Fla. 3d *452 DCA 2007), it certainly makes it more difficult for Joynt to show an economic loss. See W.R Grace & Co.-Conn., 661 So.2d at 1303; Long, 458 So.2d at 394. Inasmuch as the record fails to establish Joynt’s diminished earning capacity as a paraeducator, we conclude the jury’s award of $600,000 in damages for loss of future earning capacity is not supported by competent, substantial evidence.[4]
Next, the County argues the trial court erred in failing to grant a directed verdict on Joynt’s claim for future medical expenses. On this claim, the jury awarded $100,000 in damages. Florida law permits the recovery of “[t]he reasonable [value] [or] [expense] of [hospitalization and] medical [and nursing] care and treatment necessarily or reasonably obtained by (claimant) in the past [or to be so obtained in the future].” Fla. Std. Jury Instr. (Civ.) 601.2(b). Florida law restricts recovery of future medical expenses to those expenses “reasonably certain” to be incurred. Loftin v. Wilson, 67 So.2d 185, 188 (Fla.1953). Therefore, “it follows that a recovery of future medical expenses cannot be grounded on the mere ‘possibility’ that certain treatment ‘might’ be obtained in the future.” White v. Westlund, 624 So.2d 1148, 1150 (Fla. 4th DCA 1993) (citing 2 Damages in Tort Actions § 9.65(1), at 9-45 (1986)). Further, there must also be an evidentiary basis upon which the jury can, with reasonable certainty, determine the amount of those expenses. Loftin, 67 So.2d at 188 (“In every case, plaintiff must afford a basis for a reasonable estimate of the amount of his loss and only medical expenses ■ which are reasonably certain to be incurred in the future are recoverable.”). Some direct evidence of anticipated future medical expense is .essential to a recovery because the amount of past medical expenses incurred does not — at least by itself — provide a reasonable basis for a jury to compute future medical expenses. See DeAlmeida v. Graham, 524 So.2d 666, 668 (Fla. 4th DCA 1987). It is a plaintiffs burden to establish, through competent, substantial evidence, that future medical expenses will more probably than not be incurred. Sea Fasani v. Kowalski, 43 So.3d 805, 812 (Fla. 3d DCA 2010) (citing Kloster Cruise Ltd. v. Grubbs, 762 So.2d 552, 556 (Fla. 3d DCA 2000)).
Here, Joynt relies upon the testimony of Dr. Sharon Norris, her primary care physician, Dr. Thomas. Kryzer, her neurotologist, Dr. Samuel Amstutz, her ophthalmologist, Dr. Richard Beck, the County’s compulsory otologist, and Dr. William TriggSj the County’s compulsory neurologist, to prove that she will need a hearing aid, otologist care, ear surgery, primary care and prescription medication, and “other miscellaneous care” in the future. Careful review of the evidence, however, reveals that these claimed future medical expenses are. either not reasonably certain to be incurred, or if there is evidence from which the jury could infer .the need for future medical treatment, there is no basis upon which the jury could have, with reasonable certainty, determined the amount of those expenses.
Dr. Amstutz, who last saw Joynt in October 20H, testified that he diagnosed her with complete left facial paralysis and was concerned about-the function of her left eyelid in protecting and caring for her eye. *453 He recommended that Joynt have a gpld weight inserted into her eyelid to help-with closing, which she did. When.asked what type of future treatment Joynt would need, Dr. Amstutz testified that she may continue being dependent on using supplemental artificial' tears and gels. However, through the testimony of Dr, Norris it was revealed that Joynt no longer had issues with her left eye. drying out.
Dr, Kryzer last saw Joynt in February of 2013, more than a year before the date of trial. He performed surgery on Joynt’s left ear and testified that it is reasonably possible, somewhere between a 40% to 50% chance, that she will require another surgery- on her left ear. He further testified that “it would not surprise [him] -if [Joynt] had to do another surgery either for chronic drainage or a worsening of the hearing loss-or something like that,” and also that it “wouldn’t surprise ■ [him] if [Joynt] opted for a hearing aid in -the future.” No evidence was submitted by Dr. Kryzer as to the. cost of another ear surgery or the cost of a hearing aid.
Dr. Norris testified that, Joynt’s upper back pain and right-sided chest pain will probably worsen over time,- or at least bother her, off and on, over the years, and that she will probably need to continue on pain medication.- While Dr. Norris opined that Joynt'could need further, treatment for her back pain, such' as epidural injections, she clarified that epidural injections were a possibility depending on how Joynt does in the future, but not a medical probability. Dr. Norris. further opined that Joynt “may” need a hearing aid for her left ear. However,, no testimony was submitted through. Dr. Norris as to the cost of an epidural injection or a hearing aid.
Dr. Beck provided general testimony that a typical hearing aid- would cost thousands of dollars and last, between four and twenty years. Dr. Beck further testified that although, Joynt is a candidate for a hearing aid, whether or not.to get one is her -choice. He opined that she should continue to see an ear specialist three to four times annually, and should continue to see her general practitioner to manage her sleep disturbances and medications.
Joynt testified -that she would prefer not to get a hearing-aid stating, “I’m-just not really ready to give in to that yet.” ■'' She also ..testified that she is trying to, avoid further surgery as much as possible. She spends about $80 per month on pain and sleep medication and-does not expect that amount to change.
The combined testimony of Joynt and the doctors fails to show--that -the medical expense of a hearing aid is reasonably expected to be incurred in the future. See Nevarez v. Friskney, 817 So.2d 856, 858 (Fla. 5th DCA 2002) (holding that although the plaintiff presented expert testimony regarding her- possible need for further surgery, an award for future medical expenses was inappropriate , as she presented no evidence regarding the cost of--any-future medical -treatment, and;she-testified that she would not have the surgery). The same is true -for Joynt’s claimed need for future ear surgery and “other miscellaneous care.”[5] Dr. Kryzeris testimony that it is “reasonably possible” - that- Joynt will require additional surgery on- her ear and that “it would not surprise- [him]” if he had to perform another eurgery due to chronic drainage or hearing-loss,- is insufficient to show that these medical expenses are reasonably certain to be incurred in the fu *454 ture. See Fasani, 43 So.3d at 812-13 (recognizing there must be evidence in the record from which the jury could, with reasonable certainty, determine the amount of medical expenses the plaintiff would likely incur in the future, and the mere possibility or a recommendation by a doctor that certain treatment might be obtained in the future cannot form the basis of an award of future medical expenses). Furthermore, Joynt testified that she is' “trying to stay away from as much surgery as possible.” Cf. Nevarez, 817 So.2d at 858.
Conversely, while the record shows follow-up care by an ear specialist may be reasonably expected, no testimony regarding the cost of future otologist care was offered. Instead, Joynt relied on past billing statements from Dr. Kryzer. However, the prior statements do not set forth the average charge for a medical visit. As such, there is no evidence in the record from which the jury could have, with reasonable certainty, determined the amount of medical expense Joynt would likely incur in the future for otologist care. Cf. DeAlmeida, 524 So.2d at 668 (“While we find evidence in the record from which the jury could infer the need for future medical treatment, we do not find evidence in the record from which the jury could, with reasonable certainty, determine the amount of medical expense appellee would be likely to incur in the future.... We are not persuaded by appellee’s argument that the amount of past medical expenses furnished a reasonable basis from which the jury could draw inferences as to the facts and thus compute the amount of future medical expense”). Likewise, the evidence was insufficient for the jury to calculate the cost for future primary care and prescription medication.
Joynt’s testimony that she spends “probably around $80” monthly on prescription and over-the-counter pain medication is not conclusive and no other evidence was presented to establish the cost, amount, or duration of time she would need to remain on such medication. As for the need for future medical treatment in the form of future visits to her primary care physician — assuming there was record evidence to support a need for pain management— there is no evidence in the record from which the jury could, with reasonable certainty, determine the amount Joynt would be likely to incur in the future for this medical expense. See id. There was no direct testimony regarding the cost of such treatment and no testimony regarding how often Joynt would need to see her doctor in a given year. Instead, Joynt relies on past billing statements from Dr. Norris. However, like the records of Dr. Kryzer, Dr. Norris’ past billing statements do not clearly set forth the cost of a medical visit.
After a thorough review of the record, we conclude Joynt failed to meet her burden on her claims for future medical expenses. There was no evidence from which the jury could infer the same with reasonable certainty, just multiple speculative assertions with regard to future treatment. And, to the extent she may have shown some need, Joynt presented no evidence to establish a cost for future medical treatment and testified she did not intend to pursue some of the suggested medical procedures. Accordingly, the trial court should have granted the County’s motion for directed verdict on this claim.
Having concluded there was no reasonable evidence on which the jury could legally pi-edicate a verdict in favor of Joynt on her claims for lost earning capacity and future medical expenses, we reverse the jury’s award for those claims and remand to the trial court with instructions to strike the same from the final judgment. See Nevarez, 817 So.2d at 858 (“The remedy *455 for the jury’s erroneous award of damages not based on evidence is' to strike the award....”). In all other respects, the final judgment is affirmed.
AFFIRMED in part, REVERSED in part, and REMANDED.
WALLIS, J. and THOMPSON, T.P., Associate Judge, concur.

. Joynt was hospitalized locally for six days after suffering skull fractures and internal injuries. Upon returning to her hometown of Wichita, Kansas, Joynt underwent left ear reconstruction surgery and had a gold weight surgically inserted into her left eyelid to help her blink. At the time of trial, Joynt continued to havfe difficulty hearing in her left ear. She also suffered lingering paralysis on the left side of her face, chronic pain in her upper back, radiating chest pain, headaches, and memory loss.

. In May 2010, Joynt and her husband agreed that she would take a break from work until their youngest child started kindergarten. During this break, Joynt was injured in the accident.

. The record reflects Joynt suffered from hearing loss and constant pain, She also had some problems with short-term memory and proper pronunciation. ■

. At trial, Joynt abandoned, and thus waived, any claims for lost earnings for any promotion she could have received as a full classroom teacher and focused instead on whether ! she was employable at $18,000 annually until age sixty-five. To the extent she attempts to reraise the issue on appeal, we conclude there was ho basis upon which the jury could have reasonably assessed future economic damages as Joynt presented no evidence of the potential wages of a full classroom teacher.

. "Other miscellaneous care” involved tinnitus management, artificial tears and gels, removal of the gold weight in her eyelid, and rib x-rays. At trial, with the exception of artificial tears and gols that we’ve already addressed, no attempt was made to show that such miscellaneous care was medically neces-sury or to quantify the cost-for such care.