Darius Williams and John A. Craig, *vs.* John C. McGehee, Administrator.

DARIUS WILLIAMS AND JOHN A. CRAIG, *vs.* JOHN C. MCGEHEE, ADMINISTRATOR OF JOHN MILLER.

The tendency of the present age is to allow objections to be taken rather to the credibility than to the competency of a witness, and competency is always presumed until the contrary is established.

Where a witness had verbally assumed the payment of the expenses of a suit for the benefit of the plaintiff, so as to create a mere honorary or moral obligation on his part to comply, he is not rendered incompetent to testify as a witness for the plaintiff.

Where money has been overpaid by an agent, or paid by mistake, he is a competent witness for his principal in an action to recover it back.

No man can, by the voluntary payment of the debt of another, make himself that man's creditor, and recover from him the amount of the debt so paid.

ERROR to the Jefferson Circuit Court.

This case was tried at the Circuit before Judge BALTZELL.— The facts of the case are fully set forth in the opinion of the Court, delivered by the Chief Justice.

*McCants*, for Plaintiff in Error :

1. The whole record is before the Court.   6 Har. & Johns. 81.

2. Wm. C. Miller was incompetent from his interest in the event of this cause.   He was interested, because he had engaged to pay the cost, and the plaintiff had refused to conduct the suit; because the plaintiff's success would gain him a credit on reimbursement—the plaintiff's failure would cause him to loose the one or the other.— Stewart *vs.* Kip., 5 J. R., 256.   5 Hill's N. Y. R., 202.   Greenleaf's Ev., 458.   Story on Agency, 364–'5–'6–'7. Paley on Agency, 108.   Starkie on Ev., 1731—note.   3 Hill, N. Y. R., 580. 1 Phillips, 61–'3.   2 Ib., 110–'17.

3. The judgment below was the consequence of Wm. C. Miller's testimony, because no other testimony sustains the plaintiff's action for money paid by witness to defendants for John and Elizabeth Miller.

4. If we admit the testimony of Wm. C. Miller, it proves that the witness' own money, not the plaintiff's, was paid to defendants, and in a sum different from the accounts of John and Elizabeth

Miller. But plaintiff must show that it was his money that was paid. Archbold's N. P., 186.

5. Wm. C. Miller's testimony, if admitted, was overbalanced by the testimony of Pettus, the entry of Rouquie, the pass book, the conduct of John Miller in paying the account of Elizabeth Miller, after being informed of the pretended payment by Wm. C. Miller, and by the inconsistency of Miller's testimony with the circumstances arising in the case, and his improbable explanation of the loss of the accounts and receipts. 4 Washington, C. C. R., 123.

*Hagner,* for Defendant in Error:

The questions which present themselves on this record all arise upon the point of competency of witness William C. Miller. The Court below overruled the objection made, and allowed his testimony to go before the jury.

Let us establish the general principles on which the Courts at the present day proceed. Old cases stood on subtle grounds, 1 Phillips Evid. 46. Glenn *vs.* Van Kapff, 2 Gill & Johnson 132.

The tendency of the present age is to allow objections to be taken rather to credibility than to competency; and *competency is presumed* until *the contrary is established;* in cases of doubt witness is always received. 2 Stephens' *Nisi Prius* 1727.

Interest of witness to exclude must be *real,* not apprehended.— 1 Greenleaf on Evid. 455–6.

The obligation of honor, or apprehension of moral obligation is not such *real* interest as will exclude. 1 Campbell Rep. 144. 10 New Hamp. 88. 1 Turner & Russell, 366. 4 Wendell 292. 9 John. Rep. 219. 3 Gill & John. 282.

The reason why such obligation of honor shall not exclude is very forcibly given by Phillips, 1 Phillips Evid. 54.

Because if sense of honorary obligation be powerful enough to cause the witness to pay where not legally bound, so will it *a fortiori* make him speak the truth *under oath.*

But next it is alleged that William C. Miller, as agent, is liable to a civil action at the suit of the representative of his principal, and that therefore he was interested to protect himself.

The starting this objection brings to view the fact that William C. Miller as the agent who transacted the business is, *ex necessitate rei,* competent. Greenleaf on Evid. p. 459, also declared in case cited by the other side, 5 Johnson's Rep. 236.

But neither John Miller nor his representative could have sued said *William* for alleged breach of duty in not paying Darius Williams & Company, because by this very action they exculpate the witness and allege that he did fulfil his duty.

But even were he liable to a civil action such liability will not exclude, 1 Hall's Law Journal, 230. 1 Gill and Johnson's Rep. 366.

The cases from 3 Hill's Rep. 379, and 5 Johnson 256, cited by the other side, are clearly distinguishable from the case at bar.— That from 5 Hill 202, has no sort of bearing, for the witness here has no lien on the fund, he can have none in any event.

I will now undertake to show that William C. Miller was plainly swearing *against his interest.* Now by the testimony of Rutgers and the check on the bank, it is plain *prima facie,* that William C. Miller paid his own money to D. Williams & Company. Williams & Company, though called upon *failed to show any transaction* they ever had *with William C. Miller.* Is it not plain then that he could have sued them and recovered this money *as his own,* paid *without* consideration? Yet this very witness swears he paid it on account of his brother, and transfers to that estate the benefit, if recovery is had.

Was it not the duty of D. Williams & Company to have accounted for the possession of the check of William C. Miller, and to have shown on what account they received the money? Yet they do not do so. Their own books are produced in evidence, yet D. Williams trumps up a cock and bull story, attempting to show that the money they got credit for was sent by private hand! Can any man doubt that this check took $550 from William C. Miller's credit in bank, and transferred it to D. Williams & Company? Surely no man can be so blind as not to see that. If then D. Williams & Company did send money by Dr. Pettus, it was different money from this, and if they have not credit for it in bank, it only proves their right of action against the bank.

*Finally,* I contend, that John Miller, in his lifetime, and John C. McGehee his administrator, since his death, have had *such a vested interest* in William C. Miller's testimony, as *utterly prevented him* from *rendering himself incompetent* by *subsequent interest.* Budd's testimony shows that the imputed interest did not arise until after *revival* of suit in name of administrator of John Miller.

Now the authorities on this head are plain and abundant from the

Darius Williams and John A. Craig, *vs.* John C. McGehee, Administrator.

oldest times, and yet recognized in these days. Skinner Rep. 586. 1 Greenleaf on Evid. 204–462. Cowper 736. 3 D. & E. 27.— 3 Levinz 152. 3 Connecticut 267. 2 Dev. 187.

See also 1 Cooke's Rep. 115.

*McCants,* in reply:

It is contended that plaintiff has a vested interest in the testimony of the witness Miller. But it is sufficient to reply that plaintiff himself disavows this interest by refusing to conduct the suit.

It is also contended that the liability to civil suit does not exonerate witness. But witness does not claim exemption. On the contrary, he labors anxiously to press his testimony into the cause. The cases cited on this point belong to a different rule of evidence from the one under consideration. When witness says his answer would criminate him he shall not be *compelled* to answer.

It is also contended that an honorary obligation does not disqualify.

But in this case witness engaged to pay the costs, for without it the suit would have fallen to the ground. The case of Gilpin *vs.* Vincent is a fair instance of honorary liability, and is very different from the present one.

The defendants in error rely also on the customs of banks and merchants in relation to interest of cash and checks.

But defendants have fully accounted for their credit of $550, on the 13th of March, 1848, in the bank, by the testimony of Pettus, the entry of Rouquie dated 12th March, 1838, by the pass book crediting cash, &c. Besides the general customs of banks and merchants are different, and in this case afford no ground of inference.

The case of Elizabeth Miller is deemed to stand on the same grounds, and the same views are offered in that case. Besides plaintiff cannot contradict his own witness as is attempted in this case.

DOUGLAS, Chief Justice, delivered the following opinion:

This is an action of assumpsit instituted by John Miller in his lifetime against Darius Williams and John A. Craig to recover a sum of money alleged to have been over paid to them and money paid them by mistake. The declaration contains counts for work and labor and for an account stated and common money counts.

Darius Williams and John A. Craig, *vs.* John C. McGehee, Administrator.

Plea non assumpsit, upon which issue was joined and upon the trial of that issue there was a verdict and judgment for the plaintiff (in whose name the suit had been revived by *scire facias* before the trial) for the sum of $574 17. And the plaintiffs in error now seek to reverse the judgment upon the following grounds which they have assigned as error to wit: That the testimony of William C. Miller, a witness examined in behalf of the plaintiff in the action below, was not admissible by the law of the land, for that the said witness was interested in the said cause and the event thereof, as appears by the record and proceedings of said cause, and by the testimony made a part of said record. And also there is error in this, that the judgment aforesaid by the record aforesaid appears to have been given for the said John C. McGehee, Administrator of John Miller, against Darius Williams and John A. Craig Merchants, &c., whereas by the laws of the land the said judgment ought to have been given for the said Darius Williams and John A. Craig against the said John C. McGehee, Administrator as aforesaid.

The whole question depends upon the fact whether the record shows that the said William C. Miller was so situated that he would either gain or loose by the direct legal operation and effect of the judgment in this case, or that the record will be legal evidence for or against him in some other action. It must be a *certain, present, vested* interest, and not *remote* or *contingent*. If the interest is of a doubtful nature it goes to the credit of the witness and not to his competency. Being always presumed to be competent, the burden of proof is on the objecting party to sustain his exception to the competency, and if he fails satisfactorily to establish it, witness must be sworn. 1 Greenleaf's Ev. 458.

Having premised thus much, we proceed to examine the question presented, and to test it by the record.

The deposition of William C. Miller was taken by the plaintiff in the Court below and offered in evidence at the trial, when it was objected to by the Attorney for the defendants, but his objection was overruled and the deposition was permitted to go to the jury ; to which the defendant excepted and the deposition is set out in a bill of exceptions which constitutes a part of the record in this case and proves in substance, that in the year 1838 he was agent of the said John Miller and also one Elizabeth Miller. That his power from John Miller was both by parol and in writing. That John Miller was the agent of Elizabeth Miller and being his (John Miller's) acknowledg-

ed agent, he (William C. Miller) acted for both and his agency was always admitted. That he settled accounts, made payments and performed like services for both John Miller and Elizabeth Miller.— That on the 12th day of March, 1838, he settled accounts for both John Miller and Elizabeth Miller with the defendants. That he on that day gave to Darius Williams a check for $550 on the Union Bank of Florida being the supposed amount of his account against John Miller and Elizabeth Miller. That he gave the check to Darius Williams in a room he occupied at Brown's Hotel in Tallahassee. That there was no one present but Darius Williams and himself. That when he gave the check to Darius Williams at Tallahassee he had not the two accounts with him, but had the amount (as well as the witness could recollect) on a list, and he proposed when witness next went to Monticello to have them made out and the surplus or deficiency of the check for the su pposed amount settled at the same time. Shortly afterwards the two accounts were as well as he (witness) recollects receipted and on his (witness,) return to Talla- hassee they were left with other papers and never afterwards could be found. That he witness never had the least business transaction with Darius Williams at any time on his own account. That he never sold a check to the defendant or any one else in his life. That some time after the date of the check his brother John Miller asked him why he had not paid Darius Williams and that he stated to his brother that he had. That his brother then said Darius Williams de- manded payment of him for both of the accounts and he had settled them. That the witness afterwards called on Darius Williams knowing there was an error in the business and on reference to his cash book found the amount of the check properly debited, but no credit carried to accounts of John and Elizabeth Miller. On his cross examination he was asked the direct question " are you or not interested in the event of this suit," to which he answered I do not believe myself to be legally interested in the suit. Again he was asked "are you not responsible for costs, attorney's fees, or any of the expenses connected with these suits." To which he answered the suit was brought in my brother's name; since his death I under- stood that the Administrator of his estate had refused to become res- ponsible for attorneys fees or any incidental expenses. I have there- fore for the benefit of the estate of John Miller assumed the expen- ses, although I do not consider myself legally bound for them. The witness was shown the check and recognised it. It is as follows.

Tallahassee, March 13th, 1838.

$550.   Cashier of the Union Bank of Florida pay to D. Williams & Co. or bearer Five hundred and fifty dollars.

In pencil (at Cr. D. Williams & Co.)          W. C. MILLER.

William Budd, a witness introduced by the plaintiff to explain the testimony of William C. Miller, testified that he was Clerk of the Superior Court of the Middle District of Florida for Jefferson County, at the time of the institution of this suit and at the death of the original plaintiff.   That after the issuing of the *scire facias* to revive said suit William C. Miller the witness verbally stated that he would pay the expenses of the suit, meaning the costs of the Court as witness understood, but said William C. Miller did not enter into any written agreement.   There was ill feeling between said William C. Miller and the Administrator of John Miller, and said William C. Miller said he heard that said Administrator had refused to become responsible for the costs.   But this was after the suit had been revived in the name of the Administrator and after costs had been incurred.   The plaintiff's attorneys without objection and with consent of defendant's attorney then stated as evidence before the Court, that William C. Miller had entered into no engagement with them to pay attorney's fees or any other expenses and was not bound for any part.   The deposition of Henry L. Rutgers was also offered by the plaintiff's counsel, which was read to the jury and proves in substance that he had known the parties for at least seven years ; that he was paying and receiving teller of the Union Bank of Florida in the month of March, 1838.   That Darius Williams & Co., had an account with that Bank before and after that date, that on the 13th day of March, 1838, Darius Williams & Co., deposited a check in bank to their credit for five hundred and fifty dollars.   "Check D. Williams &. Co., $550," in my own hand writing (said the witness) is the form of the entry.   That on the same day a check of $550 was debited to the account of William C. Miller, and a similar amount was credited to the defendants.   The entry in the Ledger is "W. C. Miller, March 13th, 1838, by cash $550" and in Walter Veitch's hand writing.   Said Veitch is dead.   The form of the entry in the cash book of the bank is "D. Williams & Co. 13th March, 1838, credited by $550," and on the same day W. C. Miller debited with $550 all in the same hand writing of Walter Veitch the book keeper of the Bank since deceased.   There is no other of like amount of that date.

The plaintiff's counsel then gave in evidence the admission of the defendant that John Miller's account of 332 23-100 was paid to said defendants on the 19th of February, 1838, said account was paid by John Miller in person.

The defendant by his counsel to sustain the issue on his part then offered Dr. John G. Pettus who deposed and said—that in the Spring of 1838 he carried from Monticello to Tallahassee a sum of money, it was $500 to be deposited in the Union Bank of Florida in favor of Darius Williams & Co. That said money was handed to him in Monticello by Darius Williams the defendant. That he left Monticello on one day and on the next deposited said money in said Bank and then returned to Monticello on the same day of making said deposite. That he left Darius Williams in Monticello and on his return saw him still at Monticello ; it was in the Spring ; it was about March ; he says he never carried down money but once for said Williams ; it was about $500 ; it was not as late as May ; the sum was $500.

Defendants counsel then offered William Budd who deposed and said that he knew Gabriel Rouquie—he was dead—he was a clerk for Darius Williams & Co. Knew his hand writing. Defendants counsel then showed said witness a book of accounts of said Darius Williams & Co. and an entry in the same thus "1838, March 12, Union Bank deposite sent by Dr. Pettus, $550." Witness stated it was the hand writing of the said Gabriel Rouquie. Witness further said he had been a merchant. It was not usual to make such entries of deposites of cash.

Defendants counsel then offered and read the deposition of Henry L. Rutgers in which he testified (in substance) that he was well acquainted with Walter Veitch during his life. He held the office of book keeper in the Union Bank of Florida. He is dead. That he (witness) is well acquainted with said Veitch's hand writing and that the entry in the annexed Bank Book marked A, of the 13th March, 1838, is in the hand writing of said Veitch. This entry is on page 9, and is as follows, " March 13th, 1838, cash $550." That the Bank Book referred to is the regular pass book of the defendants with the Union Bank. That the pass books are generally in the hands of the depositors. When a deposite is made if the book is handed to the Teller he makes the entry ; if not, when the book is written up or balanced the book keeper makes the entry from the books of the bank. I do not think (said the witness) that the entries were always made on the pass book at the time of deposi-

9

ting, for on page five you will perceive that the entries run thus April, May, March and April, 1837, which show conclusively that the entries were not always made in the pass book at the time of depositing but afterwards when the bank book was written up or balanced. The witness said further that there was no other entry on the books of the bank on the 13th March, 1838, to the credit of defendants.

The defendant then offered and read the entry in pass book A above referred to in said deposition thus "1838, March 13th, cash $550." The defendants counsel then offered the admission in relation to the two accounts referred to by William C. Miller in his deposition, one for $332 20-100 and the other $181 13. That the former was paid in February, 1838, and the latter in July of the same year. Here the evidence closed and we deem it proper to say that we have made this full statement of it, not so much because we deemed it necessary to a decision of the questions presented for our consideration as for the satisfaction of the parties and especially of the plaintiffs in error and their counsel who brought this case up and so zealously and ably argued it here, and because he assumed the position in argument though he has not assigned it as error: "If we admit the testimony of William C. Miller it proves that the witness' own money and not that of the plaintiff's was paid to the defendants, and in a sum different from the accounts of John and Elizabeth Miller, and that to enable the plaintiff to recover he must prove that it was his own money that was paid."

It seemed proper therefore that we should set out the evidence very much at length in order that by a comparison of the whole it might be seen whether that is the correct view of the matter or not; for notwithstanding it might seem from the testimony of William C. Miller himself that the money paid was his own, yet that might be explained by other parts of the testimony and the money shown to be that of his principals (John and Elizabeth Miller.) And here we may be permitted to remark, "en passant," that if the money was his own, he shows himself in regard to it a most disinterested witness, as he comes to testify most strongly against his own interest, and it can hardly be supposed that if the money had been his own he would thus without objection have yielded all claim to it in favor of his brother's estate, and it is difficult too to account for the question by John Miller to the witness, "Why he had not paid Darius Williams," but upon the supposition that he (the witness) had funds of

John Miller in his hands wherewith to pay his account due Williams. And if it had been otherwise, and William C. Miller paid his own money, it would have been quite natural that some explanation should have taken place between them on the subject ·when William C. Miller told his brother that he had paid the account of Williams against him. Had it been clearly and conclusively shown by undoubted and unrebutted proof that the money paid to the defendants was the money of the witness William C. Miller, it would perhaps have been our duty to reverse this judgment for that cause, although it was not assigned for error, for the rule of law upon this subject as stated by counsel for the plaintiff's in error, seems to be well sustained by authority. Moore *vs.* Pyrke, 11 East. Reps. 52. Archbold's *Nisi Prius*, 186. Bradshaw *vs.* Bradshaw, 11 Law Journal, 5.

The count for money paid cannot be maintained, (said Parke, J., Power *vs.* Butcher, 10 B. & C., 310,) without proving actual payment.

But it has not been thus shown; and in regard to this question, as well as of all others that arise out of the discrepancies and seeming contradictions in the testimony, it is sufficient to observe, that they were matters peculiarly proper for the consideration and decision of the jury to whom they were submitted,·and whose verdict upon them should not be lightly disturbed by this Court.

We proceed, therefore, to the errors assigned, or rather *the error*. The only question presented by the assignment of errors for our consideration, to wit: was the witness, William C. Miller, when he testified in the cause interested therein, or in the event thereof? being embraced in the first error assigned.

It is contended that the plaintiff had refused to conduct the suit and that in consequence thereof the witness had assumed the payment of the costs, but it does not appear that he had entered into any specific engagement with any one, or made any stipulation by which he was legally bound to pay them. There is no proof that he had spoken to any body on the subject except William Budd the Clerk of the Court and he does not say that William C. Miller made any direct or express promise even to him, to pay them. His language is 'William C. Miller the witness stated verbally that he would pay the expenses of the suit meaning the costs of the court as he understood.' This does not import any specific engagement. If any such had been made with Mr. Budd it is presumable that he would have

understood the terms of it more definitely. Nor is there any evidence that the plaintiff had refused to conduct the suit, on the contrary the evidence appears to show pretty clearly that he was prosecuting it. Mr. Budd states that the suit had been revived and costs incurred before the statement was made by William C. Miller that he would pay the expenses and the record shows that he continued to prosecute it. The statement of the witness Miller to Mr. Budd seems therefore to have been made under a misapprehension of the facts in relation to that matter, and the attorneys for the plaintiff state expressly that he, William C. Miller, entered into no engagement with them to pay attorney's fees or *any other expenses*, and was not bound for any part. And it must be recollected that upon his cross examination he was expressly asked " are you not interested in the event of this suit," and that he answered "I do not believe myself to be legally interested in the suit." In reply to another question however he said "I have for the benefit of the estate of John Miller assumed the expenses although I do not consider myself legally bound for them." He was evidently referring to what he had said in the hearing of Mr. Budd, for he states almost word for word what Mr. Budd testified that he had said upon that occasion. That he took the correct view of his legal rights so far as they are disclosed by the record in relation to this matter we have no doubt, and if any obligation rested upon him to pay, it was a mere honorary or moral one which did not render him incompetent, since the Court can never know whether the obligation thus set up as a ground of incompetency has any real existence in the mind of the witness. Bent *vs.* Baker, 42 Law Lib. page, 99. 4 Sergent & Rawle, 226. Gilpin *vs.* Vincent, 9 John. 220. Moore *vs.* Hitchcock, 4 Wendell, 297. Such an obligation is in general of a nature so uncertain and variable, that it cannot safely be recognized in courts of justice as a motive for conduct, and besides where the sense of honor is so strong and binding as to influence a witness against his interest, it must be unnecessary to reject him, as the same principle which would induce him to pay the costs would oblige him in giving his evidence, to speak only the truth. 1 Phillip's Ev. 54.

The tendency of the present age, is to allow objections to be taken rather to the credibility than to the competency, and competency is always presumed until the contrary is established. 2 Stevens, Nisi Pr. 1727. The ends of justice are most effectually attained by a full and complete investigation of the subject in dispute, and

Darius Williams and John A. Craig, vs. John C. McGehee, Administrator.

unless the objection to the witness is strictly a legal objection he will be admitted to give evidence.    1 Phillip's Ev. 54.    It is not an objection to the competency of a witness that he has wishes or a strong bias on the subject matter of the suit, or that he expects some benefit from the result of the trial.    1 Phill. Ev. 47.    Stewart vs. Kip., 5 John. Reps. 256.    Such circumstances may influence his mind and affect his credibility, they are therefore open to observation and ought to be carefully weighed by the jury, who are to determine what dependence they can place upon his testimony, but they will not render him incompetent.    Miles vs. O'Hara, 1 Sergeant and Rawle 32.    Boulden vs. Hebert, 17 Sergeant & Rawle, 312.— Griswold vs. Ledgwick, 1 Wendell 126.    So far therefore as regards any liability to the payment of costs in this case arising from the supposed assumption of, or agreement by the witness, William C. Miller, to pay them, there is nothing to affect his competency.

But it is insisted by the attorney for the plaintiff in error on the argument of this cause that if William C. Miller had the money of his principal and paid it, a recovery in this case would entitle him to a credit, with his principal, but he was equally entitled in that case to the credit without such recovery.    It was the payment of the money that entitled him to the credit and not the recovery.

It was also suggested that if he paid his own money a recovery in this suit would also entitle him to such credit, to which (if he paid it on the request of John Miller) the same answer may be given, but if he paid it voluntarily without such request he would not have any legal claim on John Miller or his estate for the amount, for one man cannot thus make another his debtor against his will or without his consent.    Stokes vs. Lewis, 1 Term Rep. 20.    1 Saund. Reps. 264, n.    Per Lord Kenyon, Exall vs. Patridge, 8 Term Reps., 310.— Cummings vs. Forrester, 1 Maule and Sel. 500.    "No man can by a voluntary payment of the debt of another make himself that mans creditor and recover from him the amount of the debt so paid."— Lord Kenyon, Chief Justice, Child vs. Morley, 8 Term Reps., 613. Lightfoot vs. Creed, 8 Taunt. 268, (4 Eng. C. L. 100.)

But with respect to both these matters it is proper to remark that this transaction occurred in 1838 more than seven years before the deposition of the said William C. Miller above mentioned was taken, and that if he ever had any claim upon or right to a credit with the said John Miller, or if said John Miller ever had any claim on him on account of the money alleged by the witness, William C. Miller, to

Darius Williams and John A. Craig, *vs.* John C. McGehee, Administrator.

have been paid to the defendants in this case, such claims were barred by the statute of limitation at the expiration of five years from the time when the payment was made, and consequently the interest of the witness at the time when his deposition was taken was not that certain, present, vested interest, which we have seen is necessary to render a witness incompetent, but had by lapse of time become *remote, contingent,* and of a doubtful nature—an interest which goes to the credit of the witness, and not to his competency. 1 Greenleaf's Evidence 458. Dudley *vs.* Balles, 24 Wendell's Reps., 367 to 370 (and authorities there cited,) Cutter *vs.* Rathburn, 3 Hill's N. Y. Reps. 577 to 581. Even if it were doubtful upon the cases say the Court in 24 Wendell 371, and in 3 Hill 581, we ought to decide in favor of the competency.

And besides if money has been overpaid by a servant or agent or paid by mistake, he is a competent witness for his principal in an action to recover it back. 1 Phillip's Ev. 129—130. Martin *vs.* Howell, 1 Strange 647. Baker *vs.* Macrae, 3 Camp. 144. United States Bank *vs.* Stearnes, 15 Wendell 314. Franklin Bank *vs.* Freeman, 16 Pick. 528, 529, 534. 2 John. Reps. 189. 1 John. C. 408.

It is (said the Court in the case of Stafford Bank *vs.* Cornell, 1 N. Hamp. Rep., 192,) the constant practice to admit agents to be witnesses for their principals without a release although their evidence may tend to discharge themselves.

Again it has been contended that " Wm. C. Miller's testimony if admitted was overbalanced by the testimony of Pettus, the entry of Rouquie, the pass books, the evidence of John Miller in paying the account of Elizabeth Miller after being informed of the pretended payment of Wm. C. Miller, and by the inconsistency of Miller's testimony with the circumstances arising in the case and his improbable explanation of the loss of the accounts and receipts." All these we repeat were matters for the jury to whom they were submitted, and are not matters proper for the investigation and determination of this Court, and we could not determine them without invading the undeniable and exclusive prerogative of the jury, viz: The right of deciding on all matters of fact as to which contradictory evidence may be adduced. 7 Harr. and John. 294.

Upon a full and thorough examination of the record and proceedings in this case, we are of opinion that they contain no error.

The judgment of the Court below is therefore affirmed.

*Per curiam.*