495 So.2d 1195 (1986)
Mohumman Iqbal ZABRANI, Appellant,
v.
Pedro J. RIVERON and Otilia Riveron, Appellees.
No. 86-62.
District Court of Appeal of Florida, Third District.
September 23, 1986.
Rehearing Denied November 5, 1986.
*1196 Robert G. Corirossi and Joel H. Brown, Miami, for appellant.
Malcolm Lewis Kneale, Miami, for appellees.
Before SCHWARTZ, C.J., and BASKIN and JORGENSON, JJ.
JORGENSON, Judge.
Dilshad Zabrani died as the result of a gunshot wound. Her husband, Mohumman Zabrani, made a demand upon her insurance company for the proceeds under the policies. Subsequent to Zabrani's demand, the Riverons, parents of Dilshad, also sought the policy benefits. They alleged that Zabrani was not entitled to the proceeds because, with the help of his girlfriend Iris Monroy, he had murdered his *1197 wife.[1] The murder occurred on May 21, 1984, and Monroy confessed to the murder on May 25, 1984. In her confession, Monroy implicated Zabrani as the instigator and co-perpetrator of the murder. She was later found to be competent to stand trial, was tried for the crime, and was found to be not guilty by reason of insanity at the time of the murder. Zabrani has not yet been tried.
The insurance company filed an interpleader action asking the court to settle the parties' rights to the proceeds. The Riverons answered the complaint, cross-claimed against Zabrani, and sought the proceeds from the insurance policies. Zabrani answered the insurance company's complaint stating that he "is unable at this time to either admit or deny the allegations set forth in [the insurance company's] complaint and therefore denies the allegations and demands strict proof thereof." He attached no affidavits to his answer. In the same manner, he answered the Riverons' cross-claim but not until three months after he had been served. The Riverons moved for a summary judgment. Attached to their motion for summary judgment were the sworn confession of Monroy implicating Zabrani and the affidavit of Officer Arostegui who was present at Monroy's confession and who verified that the transcript of her confession was accurate. The trial court granted summary judgment for the Riverons. Zabrani appeals and, in so doing, gives new meaning to the word chutzpah.[2] We affirm.
On appeal, Zabrani makes two arguments. He maintains (1) that Monroy's confession was improperly considered by the trial court, and (2) that he cannot be required to file any supporting affidavits in answer because to do so would burden his fifth amendment right to remain silent. We reject both of these contentions.
Zabrani first asserts that the confession was improperly considered by the trial court. His theory is that if a person is insane he is also legally incompetent to testify. Monroy was adjudged to be insane on the date the murder occurred, and she confessed to the crime four days after the murder. Months later, she was found to be competent to stand trial. Zabrani contends that, according to the law in Florida, once a person is adjudged to be insane he is presumed to remain insane until it is shown that he has become sane. Horace v. Culver, 111 So.2d 670 (Fla. 1959); Eason v. State, 421 So.2d 35 (Fla.3d DCA 1982). He argues, therefore, that Monroy must be presumed to have been legally insane, and, thus, legally incompetent, from the time of the murder until the date she was found to be competent. Florida Rule of Civil Procedure 1.510(e) requires that any affidavits submitted with the motion for summary judgment "show affirmatively that the affiant is competent to testify to the matters stated therein." Because of the finding of insanity, Zabrani contends that Monroy's statement could not possibly meet this standard.
Zabrani's basic premise  that insanity equals incompetency  is faulty. It should be noted at the outset that the affidavit submitted by the Riverons was not an affidavit of Monroy's. The affidavit submitted was that of one of the investigating officers present at the confession who affirmed that Monroy's transcribed confession was accurate. Meeting the requirement of Rule 1.510(e) presents no difficulty because the competency of the officer is not at issue. As to the issue of Monroy's competency, no general finding of insanity *1198 was made; she was found to be temporarily insane at the time of the murder. Further, a finding of insanity affects credibility rather than admissibility. 2 Wigmore on Evidence § 501 (Chadbourn rev. 1979); see Williams v. McGehee, 2 Fla. 58, 68-69 (1848); McCormick on Evidence § 62 (E. Cleary 3d ed. 1984); see also People v. Dixon, 22 Ill.2d 513, 177 N.E.2d 224, 225 (1961) (patient in mental hospital who has capacity to observe, recollect, and communicate "is competent and his mental deficiency is considered only insofar as it affects the credit to be given his testimony"), cert. denied, 368 U.S. 1003, 82 S.Ct. 637, 7 L.Ed.2d 542 (1962), overruled in part on other grounds, People v. Kurth, 34 Ill.2d 387, 216 N.E.2d 154 (1966). Monroy's sworn confession has only to meet the requirements laid down for all witnesses' testimony. Section 90.603, Florida Statutes (1985), states that a person is disqualified from testifying when he is incapable of expressing himself or incapable of understanding his duty to tell the truth. In Florida Power & Light Co. v. Robinson, 68 So.2d 406, 413 (Fla. 1953), the supreme court stated that
"while a recent adjudication of insanity creates a rebuttable presumption of ... continued insanity, notwithstanding such adjudication a person is competent as a witness where it is shown that he had a lucid interval, has sufficient understanding to comprehend the nature and obligation of an oath, and that his mental capacity is such that he can understand and intelligently answer questions propounded to him."
(quoting 58 Am.Jur. Witnesses § 121 (1948)); C. Ehrhardt, Florida Evidence § 603.1 (2d ed. 1984).
Although Monroy was adjudicated temporarily insane at the time of the murder, her confession could be considered by the trial court as long as she had sufficient understanding to comprehend the nature and obligation of her oath and she understood and intelligently answered the questions propounded to her. In her confession, Monroy stated that she knew her statement was made under oath and that everything she said was the truth. She said that she knew right from wrong and that she knew that what she and Zabrani had done was wrong. She also stated that she was free from narcotics, alcohol, or any other stimulants and that she understood everything that was discussed. From a full reading of her statement, the trial court could certainly determine that her competency was shown  that she understood both what she was saying and her obligation to tell the truth. Because competency is presumed until the contrary is established, Williams, 2 Fla. at 68; see § 90.601, Fla. Stat. (1985), Zabrani has the burden of proving that Monroy was incompetent at the time the statement was given. Hackmann v. Hyland, 445 So.2d 1079, 1080 (Fla.3d DCA 1984); C. Ehrhardt, Florida Evidence § 603.1 (2d ed. 1984); see Henderson v. United States, 218 F.2d 14 (6th Cir.), cert. denied, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1955). Zabrani has made no showing that Monroy was not competent at the time she gave her statement, nor has he done anything to diminish her credibility. A thorough reading of Monroy's sworn statement convinced the trial court, and convinces us, that Monroy was perfectly competent and had relevant information to relay. Her confession was lucid, and her answers were responsive. The confession showed a witness who was free from any mental infirmity and who stated that her answers to the questions were truthful. Zabrani offers nothing to make us think otherwise.
Zabrani's second contention, that he can remain silent in the face of the Riverons' motion for summary judgment and its supporting affidavit, is also erroneous. A person is entitled to remain silent in a civil or an administrative proceeding if to answer would subject him to a "substantial penalty." See, e.g., Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (where statute provided for automatic forfeiture of policemen's jobs if they refused to testify as to employment matters, policemen could not be compelled to make choice between either incriminating themselves or remaining silent); Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (attorney could not be *1199 disbarred for asserting his right to remain silent in disbarment proceedings). While the right to remain silent applies when an individual is compelled to appear and testify incriminatingly on pain of "sanctions `capable of forcing the self-incrimination which the [Fifth] Amendment forbids,'" Minnesota v. Murphy, 465 U.S. 420, 434, 104 S.Ct. 1136, 1146, 79 L.Ed.2d 409, 424 (1984) (quoting Lefkowitz v. Cunningham, 431 U.S. 801, 806, 97 S.Ct. 2132, 2136, 53 L.Ed.2d 1, 8 (1977)), it is not absolute.
Zabrani instituted the present action by filing a claim for the proceeds of his wife's insurance policies. Although there are occasions when a party is allowed to remain silent in a civil suit, it is usually in those cases where the party is thrust into the litigation as a defendant. See City of St. Petersburg v. Houghton, 362 So.2d 681 (Fla.2d DCA 1978), and cases cited therein. In such situations, the party is forced to choose between two unpleasant alternatives  either incriminating himself or losing his suit by remaining silent. Zabrani, however, while technically the defendant due to the quirk of an interpleader action, filed the original claim for the proceeds. To allow him to prevail because he is the defendant in the interpleader action would be to elevate form over substance. See Nuckols v. Nuckols, 189 So.2d 832, 833 (Fla. 4th DCA 1966) (defendant husband sued by wife for separate maintenance, who claimed the privilege while seeking affirmative action by counterclaiming for divorce, was denied relief and characterized by court as "a profiteer of the judicial machinery and process"). Zabrani cannot be permitted to use his fifth amendment privilege as both a sword and a shield. Stockham v. Stockham, 168 So.2d 320 (Fla. 1964); see Minor v. Minor, 232 So.2d 746 (Fla.2d DCA), approved, 240 So.2d 301 (Fla. 1970).
Even if Zabrani were a typical defendant, "a defendant's refusal to testify is limited and its invocation may carry with it prejudicial consequences to the defendant's ability to defend the action." State v. Stabile, 443 So.2d 398, 401 (Fla. 4th DCA 1984). The prejudicial consequences imposed upon the silent respondent in Waskin v. Waskin, 452 So.2d 999 (Fla.3d DCA 1984), were an adjudication of contempt and a sentence of thirty days in jail. In Waskin, the ex-husband claimed that he could not meet his support obligations to his ex-wife because of the expenses incurred in defending himself against a charge that he had conspired to have her killed. The trial court properly struck his testimony after the ex-husband refused to answer a critical question concerning his defense. This court stated that he had the burden to show that he did not conspire to kill his ex-wife in order to dispel the inference that he was in willful noncompliance with the support order. The end result was that the ex-husband, by remaining silent, could not satisfy his burden of proving that he was not in willful contempt of the support order. There was no fifth amendment violation, and the contempt judgment and sentence were affirmed. Cf. Roberts v. Jardine, 358 So.2d 588 (Fla.2d DCA 1978) (defendant could not be compelled upon pain of default to answer interrogatories which would incriminate her, though her testimony could be stricken).
Like Mr. Waskin, Zabrani was welcome to remain silent, but, once he did, he could not meet his burden of proof. A movant for summary judgment has the initial burden of demonstrating the nonexistence of any genuine issue of material fact; however, once he does so, the opposing party has to come forward with counter-evidence sufficient to reveal a genuine issue. Landers v. Milton, 370 So.2d 368, 370 (Fla. 1979). Florida Rule of Civil Procedure 1.510(c) provides that a motion for summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment was not granted to the Riverons because Zabrani claimed his right to remain silent; it was granted because he did not meet his burden of showing that a material fact was in issue. There was nothing to prevent him from submitting affidavits which rebutted Monroy's confession. *1200 "`That the defendant faces ... a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination.'" State v. Buchman, 361 So.2d 692, 695 (Fla. 1978) (quoting Williams v. Florida, 399 U.S. 78, 84, 90 S.Ct. 1893, 1897, 26 L.Ed.2d 446, 451 (1970)); Waskin, 452 So.2d at 1000-01. In the face of Monroy's confession, Zabrani must at least have asserted that he did not participate in the scheme to kill his wife.
After the Riverons submitted Monroy's confession with their motion for summary judgment and Zabrani filed no affidavits in response, there was no genuine issue as to any material fact. The fact that Zabrani's refusal to testify or otherwise plead leaves him without a defense to the motion for summary judgment does not mean that his privilege against compelled self-incrimination is violated. He is not immunized from prejudicial consequences which attach to his refusal to show the existence of a material fact at issue. In this case, the consequence of Zabrani's silence is our affirmance of the summary judgment.
Affirmed.
NOTES
[1] Section 732.802(3), Florida Statutes (1983), provides that, if a named beneficiary of a life insurance policy intentionally kills the person upon whom the policy is issued, the beneficiary is not entitled to recover.
[2] See Williams v. State, 126 Ga. App. 350, 190 S.E.2d 785, 785 & n. 1 (1972):

[T]his expressive Yiddish word appears in modern English dictionaries as meaning "colossal effrontery" or "brazen gall" but as stated in The Joys of Yiddish by Leo Rosten, "The classic definition of `chutzpah' is that quality enshrined in a man, who having killed his mother and father, throws himself upon the mercy of the court because he is an orphan."
See also Mims v. Mims, 305 So.2d 787, 789 n. 1 (Fla. 4th DCA 1974).