EMAS, J.
Jerrold K. Wingate and the Wingate Law Firm (hereinafter collectively referred to as “Wingate”) appeal an order denying their motion for disbursement of costs incurred during their representation of several of the seventy-seven plaintiffs in cases against Celebrity Cruises, Ltd. and Royal Caribbean Cruises, Ltd. (“RCL”).[1] We affirm.
In 2007, plaintiff Charles Mackarthy, represented by Wingate, filed suit against RCL. On January 8, 2008, RCL filed a motion to disqualify Wingate as counsel for Mackarthy, alleging Wingate had been paying an RCL employee to provide insider information on the cruise line’s claims files. At the time this motion to disqualify was filed, Wingate also represented seventy-six other plaintiffs in separate lawsuits against RCL.[2]
Attached to the motion to disqualify was an affidavit from the RCL employee, who verified she had received payments from Wingate in exchange for providing settlement authority information from RCL’s files, including the settlement value which RCL assigned to those claims and the maximum amount RCL had reserved to settle each claim. RCL further alleged that Wingate, “armed with this confidential information ... would attend the mediation and refuse to negotiate an amount lower than the amount set as a maximum by RCL internally.” RCL’s motion to disqualify Wingate also requested sanctions, including an award of attorney’s fees to RCL.
At the hearing on the motions to disqualify, Wingate stipulated that it would withdraw from representing all seventy-seven plaintiffs. Accordingly, the trial court entered an omnibus order on January 28, 2008, finding, inter alia: (1) the motion to disqualify was moot because Wingate agreed to withdraw; (2) Wingate must cease and desist representation of all plaintiffs in the subject seventy-seven eases; and (3) Wingate would be permitted to file a charging lien for fees and costs incurred in representing the subject plaintiffs, but said permission to filé such lien was not to be construed as approval or disapproval of the lien; and (4) the merits of any such claims for fees and costs, including both entitlement and amount, would be adjudicated by the court at a future hearing.
On February 21, 2008, the court held a hearing on RCL’s motion for sanctions. Wingate maintained that sanctions should *182 not be imposed because Wingate had withdrawn and no wrongdoing had been proven. Wingate also represented to the court that Wingate had not yet decided whether, and the extent to which, it would seek recovery of its fees and costs, and told the court that many of the former clients hired another firm, Rivkind, Pedraza & Margu-lies, P.A. (“the Rivkind firm”), to represent them in the RCL cases.
At a hearing held on January 15, 2009, it was brought to the court’s attention that Wingate had entered into a secret agreement with successor counsel (the Rivkind firm), through which Wingate would receive, and had in fact already begun to receive, as attorney’s fees and costs, a portion of the funds recovered in the RCL cases.[3] The court found that Wingate had “intentionally subverted” the January 28, 2008 order, and ordered Wingate to show cause why they should not be held in criminal contempt of court.
On February 18, 2009, the court held a hearing on the order to show cause. During the hearing, Wingate agreed to withdraw (or refrain from filing) any charging lien for attorney’s fees on all of the seventy-seven cases. However, Wingate contended that they should be permitted to seek reimbursement of costs actually expended in the course of representing the seventy-seven plaintiffs. The following exchange took place between the court and Wingate’s counsel:
THE COURT: Well, let’s deal with Mr. Wingate’s position.
COUNSEL: Yes.
THE COURT: What is his position?
COUNSEL: His position is that ... he is entitled to recover cost[s] as the cases are resolved, whatever costs were expended.
THE COURT: I found this man acted improperly in obtaining these monies.
COUNSEL: Cost[s], please let me separate cost[s] from fees.
THE COURT: I am not going to give this man a nickel if I already found, as I have, that in fact he obtained an unfair advantage by bribing an employee on the other side to let him know what the settlement value of the case was.
COUNSEL: Judge—
THE COURT: I am not going to give him a nickel.
COUNSEL: Judge, Judge, I’m not asking you to agree with—
THE COURT: Then he does it behind my back by getting a nickel plus.
COUNSEL: Judge, Judge, I am not asking you to agree with me. You asked me what his position was.
THE COURT: All right, if that is his position, I reject it.
COUNSEL: His position is, at this point, he’s entitled to recover costs expended.
(Emphasis supplied.)
Thus, the court made it abundantly clear that, based upon its findings of Wingate’s illegal and unethical conduct, Wingate was not entitled to “recover cost[s] as the cases are settled” from any of the seventy-seven cases. Thereafter, the court entered a contempt order against Wingate, finding the agreement with the Rivkind firm was “a secret, self-serving and illegal arrangement intended as a means of evading this *183 Court’s order concerning Wingate’s claim to fees and costs from files which he abandoned.” (Emphasis supplied.) The trial court recounted the relevant history of the case, noting that in its previous order confirming Wingate’s withdrawal from representation of the seventy-seven plaintiffs, the court ordered that any claims by Win-gate for fees and costs would be adjudicated by the court. The court found that, by entering into the secret agreement with the Rivkind firm, Wingate “willfully disobeyed its Orders regarding the right to seek fees and costs arising out of the seventy-seven (77) cases in question, and for having knowingly received fees and costs in violation of this Court’s Orders.” (Emphasis supplied). The court found Wingate in criminal contempt for this conduct.[4]
Wingate appealed the trial court’s contempt order. Wingate framed the issue on appeal:
THE TRIAL COURT ERRED AS A MATTER OF LAW IN ORDERING, AS A CONTEMPT SANCTION, WIN-GATE TO DISGORGE MORE ATTORNEYS’ FEES THAN THEY HAD RECEIVED AND IN ORDERING WINGATE TO DISGORGE COSTS INCURRED.
Other than correcting a mathematical error, this Court affirmed the trial court’s contempt order, finding that Wingate’s argument on appeal “lacks merit.” Wingate v. Celebrity Cruises, 47 So.3d 934, 934 (Fla. 3d DCA 2010). Thus, this Court has already addressed and rejected the contention that the trial court erred in ordering Wingate to disgorge monies paid to them for costs incurred in the course of their representation.
Mr. Wingate was evidently unfazed by the order of criminal contempt, undaunted by the unsuccessful appeal of that order, and undeterred by the disciplinary proceedings and his ultimate disbarment. Four days after this Court issued the mandate in the first appeal, and in what appears to be a textbook example of legal chutzpah,[5] Wingate filed a motion with the trial court for disbursement of costs, asserting Wingate was entitled to costs incurred in cases which had not yet been settled at the time of the contempt hearing. Once those cases were settled, amounts representing costs were deposited by the Rivkind firm with the clerk of court. *184 The trial court denied Wingate’s motion “in light of the dishonest and contumacious conduct of ... Wingate ... as set out in the Contempt Order previously entered by this court,” finding Wingate was “not entitled to such relief.” This appeal followed.
Wingate contends that the trial court’s denial of Wingate’s motion seeking costs for cases which had not yet been settled at the time of the contempt hearing was tantamount to imposing a new sanction for the same conduct for which Wingate had already been sanctioned. Wingate argues that double jeopardy principles preclude punishing them twice for the same conduct. Alternatively, Wingate argues that the trial court was required to conduct a new contempt hearing and follow the procedures of Florida Rule of Criminal Procedure 3.840 before imposing a sanction of denying costs for the cases which were settled after the contempt order was issued. We disagree.
We first note that Wingate’s motion was legally insufficient. Although it was styled “Motion for Disbursement of Costs”, the motion wholly fails to:
• Identify which of the seventy-seven cases Wingate was seeking reimbursement of costs;
• Set forth the actual and specific amount of costs incurred for each of those cases; and
• Attach a copy of any documents itemizing the actual costs incurred.
Indeed, Wingate’s two-page motion states simply that in its “representation of various claimants, Wingate incurred and advanced payment of certain costs on behalf of its former clients. The costs included hearing and deposition transcripts, filing fees, long distance telephone charges, mailing, deliver and courier service fees, expert fees, and costs for obtaining copies of medical records.” No further detail is given, and Wingate did not provide the exact amount for the total costs sought, stating only: “[u]pon information and belief, the total amount of costs disbursed by Wingate for and on behalf of those former clients and now deposited to the Registry of the Court [by the Rivkind firm] is in the approximate amount of One Hundred and Fifty Thousand Dollars ($150,000).”
In the ordinary case, an attorney would not be required to obtain the trial court’s authorization before disbursing costs following settlement of these cases. However, these were no ordinary cases. In January 2008, when the trial court allowed Wingate’s withdrawal from all seventy-seven cases (including those which had already settled and those which remained pending), the court ordered that any claim for reimbursement of costs be brought before the trial court for an adjudication of Wingate’s entitlement to costs and the amount. The court’s determination would include an adjudication of both entitlement and amount.
As described above, Wingate’s motion failed to include any of the requisite detailed information which would permit the trial court to make a determination of entitlement or amount. Additionally, Wingate failed to provide a transcript of the hearing on the motion, which precludes our ability to provide meaningful review. Based upon the facial insufficiency of the motion, and the absence of a transcript, we affirm the trial court’s order. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla.1979).
Furthermore, Wingate misapprehends the trial court’s contempt order, as well as the nature and extent of the sane- *185 tions imposed.[6] At the show cause hearing on February 18, 2009, the trial , court expressly rejected Wingate’s position that it was entitled to reimbursement for costs expended on any of the seventy-seven cases. Wingate’s counsel advised the court at the hearing that Wingate’s position was that he “is entitled to recover cost[s] as the cases are resolved, whatever costs were expended.” The trial court responded: “All right, if that is his position, I reject it.” The trial court made it clear that Wingate was not entitled to any fees or costs on any of the seventy-seven cases from which Wingate had withdrawn — not because he withdrew, but for the reasons which led to his withdrawal, together with the fact that Wingate thereafter entered into a secret and illegal agreement under which he received fees and costs without the court’s knowledge, and in violation and circumvention of the court’s order.
Wingate argues that, because the court’s contempt order addressed only the fees and costs which had already been paid for cases that had been settled, Wingate was free to seek reimbursement for costs on cases that were settled after the contempt order was issued. We do not agree. The settlement status of the seventy-seven cases fell into three different categories:
• “Settled and disbursed” cases, meaning that RCL had already paid a settlement to the Rivkind firm and a portion of those monies were paid to Wingate;
• “Settled, not disbursed”, meaning that RCL had already paid a settlement to the Rivkind firm but no portion of those monies had been paid to Win-gate;
• “Pending”, meaning RCL had not yet paid any settlement monies to the Riv-kind firm.
As to the first category of cases (“settled and disbursed”), the court ordered that the monies received by Wingate from the Riv-kind firm be repaid by Wingate to the clerk of court within thirty days.[7] As to the second category of cases (“settled, not disbursed”), the court ordered that the Rivkind firm “shall forthwith pay all of the fees and costs otherwise payable to Win-gate” to the clerk of court. As to the third category of cases (“pending”) no provision was included in the order, as no settlement had yet been reached and no monies had yet been paid by RCL.
It is this “omission” which Wingate seizes upon in an effort to seek reimbursement of costs for cases which were “pending” at the time of the contempt hearing and which were later settled. Wingate has offered no rational basis for the contention that he is entitled to such costs, other than the fact that the court did not include a provision directing the “disbursement” of these funds. Of course, the reason why no such provision was included in the order is quite simple: there had been no settlement in any of these cases; there was no way of knowing if there would be a settlement in any of these cases; and if there was a settlement, there was no way of knowing how much money would be paid by RCL.
The fact that the trial court’s contempt order addressed the disposition of monies only from the first two categories of cases (settled and disbursed; settled, *186 not disbursed) and did not address the third category (pending) was neither an invitation for Wingate to seek reimbursement for costs once those cases settled, nor a recognition that such costs would be treated differently than the costs for cases in the other two categories. Such a contention would make a mockery of the underlying contempt order and ignore the court’s express findings at the hearing, as well as the fact that Wingate already appealed — unsuccessfully—the trial court’s authority to order Wingate to forfeit all fees and costs from the seventy-seven cases.[8]
More to the point, the trial court’s contempt order expressly found that Wingate had to repay fees and costs he already received, and also expressly found that Wingate was not entitled to fees and costs on cases which had settled but the monies (being held by the Rivkind firm) were not yet disbursed to Wingate. There is no basis in logic or law to distinguish the fees and costs in the “settled, not disbursed” category from the “pending” category. The court prohibited the Rivkind firm from paying Wingate in the former, and directed those monies be deposited with the clerk of the court. The same would necessarily hold true for the latter if and when the cases moved from the “pending” category to the “settled, not disbursed” category. The fact that the trial court did not expressly direct the disposition of the as-yet-unpaid monies from as-yet-unsettled cases was nothing more than a practical acknowledgment of the fact that, until those cases were settled, and monies paid to the Rivkind firm, there was nothing for the court to order disbursed or distributed.
Accordingly, we affirm the trial court’s order denying Wingate’s motion for disbursement of costs. We remand this cause to the trial court for the appropriate disbursement of monies which continue to be held by the clerk of court. It would appear that, given the unique circumstances presented, the most appropriate course would be to return to each of the applicable claimants the respective share of the monies which were deducted as “costs” from the settlement of their claim and deposited with the clerk. In the event that some of the individual claimants cannot be located following a diligent search, we are confident that the trial court will fashion the appropriate disposition of any remaining monies.[9]
Affirmed.

. Celebrity merged with Royal Caribbean Cruises in 1997. Accordingly, Celebrity/Royal Caribbean will hereinafter be collectively referred to as "RCL”.

. RCL subsequently filed motions to disqualify Wingate in the other seventy-six cases filed by Wingate, and moved to consolidate those cases with the Mackarthy case. All seventy-seven cases were consolidated and transferred to Judge Stettin for the limited purpose of disposing of the motions to disqualify Win-gate.

. It was soon discovered that Wingate had entered into this secret agreement before the February 21, 2008 hearing.

. In addition to finding Wingate guilty of criminal contempt, the trial court referred Mr. Wingate to the Florida Bar. The Florida Bar initiated a disciplinary action based upon the conduct described herein. A referee, appointed to conduct the disciplinary proceedings, recommended that Mr. Wingate be found guilty of violating Rules of Professional Conduct 4-4.4(a) (respect for rights of third parties); 4-5.3(b) (failure to supervise a non-lawyer); 4-5.4(a) (sharing fees with nonlaw-yers); 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 4-8.4(d) (conduct prejudicial to the administration of justice). Mr. Wingate did not contest the referee’s report. The Florida Supreme Court approved the report and disbarred Mr. Wingate. See The Fla. Bar v. Wingate, 13 So.3d 1057 (Fla.2009).

. Zabrani v. Riveron, 495 So.2d 1195, 1197 (Fla. 3d DCA 1986) ("[Tjhis expressive Yiddish word appears in modern English dictionaries as meaning ‘colossal effrontery’ or 'brazen gall' but as stated in The Joys of Yiddish by Leo Rosten, "The classic definition of ‘chutzpah’ is that quality enshrined in a man, who having killed his mother and father, throws himself upon the mercy of the court because he is an orphan.” (quoting Williams v. State, 126 Ga.App. 350, 190 S.E.2d 785, 785 & n. 1 (1972))). See also Ramirez v. United Auto. Ins. Co., 67 So.3d 1174, 1175 (Fla. 3d DCA 2011); Jack Achiezer Guggenheim, The Evolution of Chutzpah As A Ilegal Term: The Chutzpah Championship, Chutzpah Award, Chutzpah Doctrine, and Now, the Supreme Court, 87 Ky. L. J. 417 (1999).

. We address this issue only because the trial court expressly stated that it was denying the motion "in light of the dishonest and contumacious conduct of ... Wingate ... as set out in the Contempt Order previously entered by this court.”

. The court determined that the Rivkind firm had paid Wingate a total of $219,653.07: $124,474.67 in fees and $95,178.40 in costs.

. We are, of course, bound by the law of the case doctrine which provides that "points of law adjudicated in a prior appeal are binding in order to promote stability of judicial decisions and to avoid piecemeal litigation.” Bueno v. Bueno de Khawly, 677 So.2d 3, 4 (Fla. 3d DCA 1996), quoting Jacobson v. Humana Med. Plan, Inc., 636 So.2d 120, 121 (Fla. 3d DCA 1994).

. While we do not direct how the trial court should direct the disbursement of such monies, we note that Chapter 7 of the Rules Regulating the Florida Bar, entitled "Clients' Security Funds Rules”, establishes a fund for the purpose of providing "monetary relief to persons who suffer reimbursable losses as a result of misappropriation, embezzlement, or other wrongful taking or conversion by a member of the Florida Bar....” Rule 7-3.2 provides that the Florida Bar Board of Governors "is authorized to accept for the fund any contribution or gift offered to it for use in furtherance of the purposes of the fund.”